Commissioner (Tex. Sup.) 240 S. W. 300, and by Associate Justice Pierson in the case of Clements v. Robison, Commissioner (Tex. Sup.) 239 S. W. 902. These opinions are decisive in maintaining the validity of these classifications as against relators' attack.

Relators' principal contention is that their vendor, Fred Gibson, became the purchaser of this land under its classification by the land commissioner as dry grazing land on the 4th day of January, 1907. There would be much force in this contention, supported by the land commissioner's letter of January 4, 1907, together with the transmission of a copy thereof to the county clerk, were it not for the fact that the land commissioner's acts as a whole created uncertainty as to his real intention with respect to the classification of this land as "dry grazing and mineral" or as "dry grazing" alone at the time Gibson forwarded his application, and Gibson himself then construed the commissioner's classification of the land as "dry grazing and mineral." We do not think that Gibson or his assignees could thereafter in good conscience assert that they purchased the land under any other classification. The fact that Gibson intended and agreed to buy the land under its mineral classification is made plain by the affidavit which accompanied his application. The affidavit is to the effect that the land had been classed as mineral land; that he waived all rights to the minerals; and that, in the event of a sale of the land to him, he expressly agreed that he should acquire no right, title, or interest in or to any minerals then or thereafter known or found in or on the land. This affidavit seems to have been made under article 3495 in title 71, of the Revised Statutes of 1895, which provided that, when application was made to buy any of the public school, university, asylum, or public lands containing valuable mineral deposits—

"except where the application is made under this title, the applicant shall make oath that there is not, to the best of his knowledge and belief, any of the mineral embraced in this title thereon, and when the commissioner has any doubt in relation to the matter he shall forbear action until he is satisfied. And any sale or disposition of said lands shall be understood to be with a reservation of the mineral thereon to be subject to location as herein provided."

The land commissioner treated the application, together with the affidavit, as relating to land under mineral classification, as shown by the indorsement on the application, and by the issuance of the oil and gas permit.

With both the applicant and the land commissioner dealing with the land at the date of, and subsequent to, the application, as under a mineral classification, and as subject to the terms of article 3495 the minerals must be considered as reserved by the state. It follows that the oil and gas permit was not invalid, and hence we refuse the motion for permission to file the petition for mandamus.

CURETON, C. J., took no part in this decision.

---

MILLERS' INDEMNITY UNDERWRITERS v. HAYES. (No. 322–3664.) *

(Commission of Appeals of Texas, Section A. May 10, 1922.)

1. Master and servant ⬤⟿416—Order denying compensation reviewable by Industrial Accident Board.

Workmen's Compensation Act (Acts 1917, c. 103), § 12d, pt. 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—25), providing that the Industrial Accident Board may review any award or order ending, diminishing, or increasing compensation or change or revoke its previous order, permits a review not only in cases where compensation has been allowed, but in cases in which an order denying compensation has been entered, and the Board has power to set aside the order denying compensation and make an award in favor of the claimant.

2. Master and servant ⬤⟿417(4½)—Order in compensation case reviewable by Board unless appeal to court is perfected by suit.

Under the Workmen's Compensation Act (Acts 1917, c. 103), § 5, pt. 2 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—44), outlining the steps to be taken to remove a case from the Industrial Accident Board to the courts, jurisdiction of the court does not attach until the appeal is perfected by giving notice and filing suit within the time prescribed, mere notice being insufficient, and unless jurisdiction attaches the Board may continue to exercise its powers of review conferred by section 12d, pt. 1 (art. 5246—25), which includes the power to set aside an order denying compensation and make an award to claimant.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Proceeding by Eleanor Hayes against the Millers' Indemnity Underwriters before the Industrial Accident Board, for an award. On an order denying plaintiff an award, plaintiff filed suit in a district court. On a rehearing, an award was made in favor of plaintiff, and defendant filed suit in the same district court. The suits were consolidated. From a judgment of the Court of Civil Appeals (230 S. W. 833), affirming a judgment for plaintiff, defendant brings error. Affirmed.

Collins, Morris & Barnes, of Beaumont, for plaintiff in error.

T. N. Hill and J. A. Harrison, both of Beaumont, for defendant in error.

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied June 24, 1922.

SPENCER, P. J.  Charley Hayes, an employé of the Beaumont Shipbuilding & Dry Dock Company, a corporation, was killed during the course of his employment as such employé.  The company was an employer within the meaning of the Workmen's Compensation Law, and plaintiff in error, Millers' Indemnity Company, was its insurer under the act.

Defendant in error, Eleanor Hayes, claiming to be the common-law wife of Charley Hayes, deceased, filed a claim for his death with the Industrial Accident Board.  On June 20, 1919, the Board entered an order denying her compensation upon the ground that she was not the wife of the deceased. She gave notice of her unwillingness to abide by the ruling of the Board within the time specified by the act, but did not file her suit within 20 days after giving notice of appeal.  A suit was filed by her, however, on July 19, 1919.

Subsequent to the filing of the suit defendant in error made application to the Board to have its former order, denying a recovery, set aside.  After due notice to all interested parties, the Board upon a reconsideration of its original holding, set it aside, and awarded defendant in error compensation.  Plaintiff in error gave notice of appeal, and within the time required by the act filed suit to set aside the award to defendant in error.  Both suits were filed in the same court in Jefferson county, Tex. By agreement of the parties the two suits were consolidated and tried as one cause. It was also agreed that the only issue of fact to be determined was whether defendant in error was the common-law wife of Charley Hayes, deceased.  This was the sole issue submitted to the jury, and it was answered in favor of defendant in error. Judgment was rendered in favor of defendant in error, and upon appeal was affirmed. 230 S. W. 833.

[1] The sections of the act (Acts 1917, p. 269, c. 103 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—25, 5246—44, 5246—82]) calling for construction read:

Section 12d, pt. 1: "Upon its own motion or upon the application of any person interested showing a change of conditions, mistake, or fraud, the Board at any time within the compensation period may review any award or order, ending, diminishing or increasing compensation previously awarded within the maximum and minimum provided in this act, or change or revoke its previous order sending immediately to the parties a copy of its subsequent order or award.  Review under this section shall be only upon notice to the parties interested."

Section 5, pt. 2: "All questions arising under this act, if not settled by agreement of the parties interested therein and within the terms and provisions of this act, shall, except as otherwise provided, be determined by the Board. Any interested party who is not willing and does not consent to abide by the final ruling and decision of said Board shall within twenty days after the rendition of said final ruling and decision by said Board give notice to the adverse party and to the Board that he will not abide by said final ruling and decision.  And he shall within 20 days' after giving such notice bring suit in some court of competent jurisdiction in the county where the injury occurred to set aside said final ruling and decision and said Board shall proceed no further toward the adjustment of such claim, other than as herein-after provided; provided, however, that whenever such suit is brought, the rights and liability of the parties thereto shall be determined by the provisions of this act, and the suit of the injured employé or person suing on account of the death of such employé shall be against the association if the employer of such injured or deceased employé at the time of such injury or death was a subscriber as defined in this act. If the final order of the Board is against the association then the association and not the employer shall bring suit to set aside said final ruling and decision of the Board, if it so desires, and the court shall in either event determine the issues in such cause instead of the Board upon trial de novo and the burden of proof shall be upon the party claiming compensation.  In case of recovery the same shall not exceed the maximum compensation allowed under the provisions of this act. If any party to any such final ruling and decision of the Board, after having given notice as above provided, fails within said twenty days to institute and prosecute a suit to set the same aside, then said final ruling and decision shall be binding upon all parties thereto, and, if the same is against the association, it shall at once comply with such final ruling and decision, and failing to do so the Board shall certify that fact to the Commissioner of Insurance and Banking, and such certificate shall be sufficient cause to justify said Commissioner of Insurance and Banking to revoke or forfeit the license or permit of such association to do business in Texas."

Section 1, pt. 4: "The following words and phrases as used in this act shall, unless a different meaning is plainly required by the context, have the following meanings, respectively:

" 'Employer' shall mean any person, firm, partnership, association of persons or corporations or their legal representatives that makes contracts of hire.

" 'Employé' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

Acts 35th Leg., Reg. Sess., 1917.

Plaintiff in error takes the position that, as defendant in error failed to institute suit to set aside the award within 20 days from the date of giving notice that he would not abide by the final ruling and decision of the Board, that such ruling and decision became binding upon all the parties, and that the Board was thereafter without pow-

er to reopen the case. Defendant in error insists that the failure to perfect the appeal was an abandonment thereof, and that the administration of the claim rests with the Board as though no notice had been given.

It is observed that the statute allows 20 days in which to give notice of the unwillingness to abide by the decision of the Board and 20 days after the giving of the notice in which to file suit. The appealing party has an aggregate of 40 days in which to perfect his appeal, unless it be held that by giving the notice on a day before the twentieth day he lessens the number of days to which he is entitled. In this case the notice was given on the fourth day after the decision of the Board, and the suit filed on the twenty-ninth day after the decision, but more than 20 days after giving notice. Neither of the parties to the suit treat the filing of the suit by defendant in error as having the effect of removing the cause to the court. If the effect was to remove the cause to the court, then the case has been properly disposed of. Therefore we pretermit any discussion of the question, but will treat the appeal as not having been perfected, and the court as without jurisdiction in virtue of the suit by defendant in error. Our decision will rest upon the power of the Board to review cases in which notice of appeal has been given but not perfected.

Section 12d, pt. 1, and section 5, pt. 2, deal with entirely different phases of procedure. Section 12d has reference to hearings before the Industrial Accident Board in those cases which have not been removed to the courts in the manner pointed out by section 5, pt. 2. It is idle to contend that section 12d has reference only to those cases in which compensation has been allowed the injured employé. The language in which the statute is laid is broad enough to permit a review by the Board, not only of those cases in which compensation has been allowed, but in those cases in which an order denying compensation has been entered. Had the lawmakers been content to declare that the Board at any time within the compensation period may review any award or order ending, diminishing or increasing compensation previously awarded, there might be some ground for the contention. But the Legislature did not rest at this juncture. It added this significant clause: Or change or revoke its previous order. Had it intended to confine the Board to a review of those cases in which it had awarded compensation, it would have omitted this particular clause. If it was not intended as an extension of the power to review beyond that which the preceding clause authorizes, then it is but a meaningless repetition. The declaration should be given force, instead of construing it as meaningless and impotent.

If this section is not authority for a rehearing by an injured employé who has suffered an adverse ruling by the Board, then no authority for review in his behalf, except by appeal, is to be found in the act. In the event of an award to an injured party, the association might feel aggrieved by the award and yet refrain from appealing therefrom, as it has the assurance in virtue of this section that it may at any time within the compensation period make application and have the award reviewed. If the section be given the construction contended for by plaintiff in error, no such right would be accorded the injured employé. He might, under a given state of facts, realize the futility of an appeal, and therefore decline to appeal. Subsequently developed facts at some time within the compensation period strengthening the case in favor of an award would, under the construction contended for, avail him nothing. This would be an injustice and discrimination which is not to be found in the act, and which ought not and will not be written therein by construction.

As further substantiating the correctness of the conclusion reached, a reference to the history of this legislation will not be amiss. The law was first enacted in 1913. Acts 33d Leg. p. 429 (Vernon's Sales' Ann. Civ. St. 1914, arts. 5246h to 5246o). That law did not contain the provisions now found in section 12d. Section 12d as a part of the present law was enacted in March, 1917. Acts 35th Leg. p. 269, c. 103. The language used is a substantial copy of section 22 of the New York Compensation Law (Consol. Laws, c. 67). At the time that this section was borrowed from the New York Act there was extant an opinion by the Supreme Court of that state construing section 22 in connection with sections 23 and 74 of the New York Act. Beckmann v. J. W. Oelerich & Son, 174 App. Div. 353, 160 N. Y. S. 791. In that case the claimant was allowed compensation, but subsequently, on August 30, 1915, after due notice, an order was entered discontinuing the payments, from which no appeal was taken. On October 6, 1915, upon application of the claimant, the Commissioners reopened the case and entered an order awarding him compensation. Objection was made by the insurer to reopening the case, upon the ground that the claimant's only remedy was by appeal, which he had failed to take advantage of. In disposing of the contention the court said:

"The insurance carrier bases his right to a reversal of the award upon three grounds: First, that the claimant's only remedy was by appeal under section 23, and that the Commission had no right, after the time to appeal had

expired, to open the case and make an award. * * * The pertinent portion of section 23 is as follows:

" 'Sec. 23. *Appeals from the Commission.* An award or decision of the Commission shall be final and conclusive upon all questions within its jurisdiction, as against the state fund or between the parties, unless within thirty days after a copy of such award or decision has been sent to the parties, an appeal be taken to the Appellate Division of the Supreme Court of the Third Department.'

"This provision is susceptible of but a single construction as applied to an appeal; but as applied to a rehearing by the Commission the section must be read in connection with sections twenty-two and seventy-four, which provide as follows:

" 'Sec. 22. *Modification of Award.* Upon its * * * motion or upon the application of any party in interest, on the ground of a change in conditions, the Commission may at any time review any award, and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded. * * *'

" 'Sec. 74. *Jurisdiction of Commission to be Continuing.* The power and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modification or change with respect to former findings or orders relating thereto, as in its opinion may be just.'

"* * * Apparently upon the application for a rehearing, facts were brought to the attention of the Commission indicating that its decision had been made without full knowledge of the facts, making it questionable in the judgment of the Commissioners whether the claim had been justly disposed of. Possessed of this uncertainty, the Commission was not only within its rights, but in the discharge of a positive duty when it granted a rehearing, and when later confronted by additional evidence, and believing its former decision to be incorrect, it promptly corrected it."

The provision of section 74 which is not to be found in our law no doubt influenced to some extent the decision in the New York case, but nevertheless what is there said is persuasive of the holding made in the present case.

[2] Section 5, pt. 2, of the act deals solely with appeals, and outlines the steps to be taken to remove the cause to the courts for determination. Upon the perfecting of the appeal, which is done by giving notice and filing suit within the time prescribed, the court assumes jurisdiction over the case, and the Board loses all control over the matters litigated in its final decision, and can thereafter exercise no control of the case inconsistent with the control by the courts.

It should be borne in mind, however, that the jurisdiction of the court does not attach until the appeal has been actually perfected. The mere notice of appeal does not confer jurisdiction. An appeal from a decision of the Board to the courts is analogous to an appeal from the district court to the Court of Civil Appeals in which the filing of a bond is a prerequisite to the perfection thereof. It is not only the general rule, but has been pointedly decided in this state, that the mere notice of an appeal, in those cases in which a bond is required, will not suspend the jurisdiction as an appeal would have done. Santa Fé, L. E. & P. Land & Trust Co. v. Cumley, 62 Tex. Civ. App. 306, 132 S. W. 889 (writ of error denied).

In the case cited Cumley filed suit in the district court of Midland county, and the defendants each filed his plea of privilege to be sued in Jones county. These pleas were sustained. Cumley gave notice of an appeal, and was allowed 20 days after the adjournment of the term in which to file statement of facts and bills of exception, but he did not perfect his appeal. He subsequently secured a default judgment in Jones county, and the defendants contended the notice of appeal suspended the jurisdiction of the district court. The court said:

"* * * It is true the statute now in force under which the transfer to Jones county was made appears to authorize an appeal from such order, and it would, of course, follow that an appeal duly perfected would suspend the jurisdiction of the court to which the transfer had been made pending such appeal, but we cannot hold that the mere giving notice of appeal would have such effect, especially after the lapse of the time within which by law an appeal bond is required to be filed. The proceeding we think is analogous to the issuance of an execution on a final judgment. It may be suspended by perfecting an appeal, but the mere notice of appeal will have no such effect."

It follows that, unless the jurisdiction of the court attaches, the Board may continue to exercise, during the compensation period, the powers conferred by section 12d. As has been indicated, this includes the power to set aside an order denying compensation and make an award in favor of the claimant.

We recommend, therefore, that the judgments of the Court of Civil Appeals and of the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.